PAMELA J. BEVINS, FORMERLY KNOWN AS PAMELA J. GETTMAN, APPELLANT AND CROSS-APPELLEE, V. STEVEN H. GETTMAN, APPELLEE AND CROSS-APPELLANT.

697 N.W.2d 698

Filed May 24, 2005.   No. A-03-913.

Angela A. Houston and Jeffrey A. Wagner, of Schirber & Wagner, L.L.P., for appellant.

Virginia A. Albers, of Lieben, Whitted, Houghton & Slowiaczek, for appellee.

INBODY, Chief Judge, and IRWIN and SIEVERS, Judges.

SIEVERS, Judge.

Pamela J. Bevins, formerly known as Pamela J. Gettman, appeals the decision of the district court for Douglas County upon a petition to modify, which decision used a joint physical custody calculation to determine child support. At issue are a stipulation of the parties that child support be calculated on a joint custody basis as a deviation from the Nebraska Child Support Guidelines and the effect the courts should give to such a stipulation.

## FACTUAL AND PROCEDURAL BACKGROUND

Pamela and Steven H. Gettman were married on April 4, 1987, in Omaha, Nebraska. During the marriage, one child, Mitchell H. Gettman, was born to the parties on December 3, 1993. A decree of dissolution of the marriage was entered on January 23, 2002.

Pursuant to the decree, Pamela was awarded custody of Mitchell, subject to Steven's right of visitation. Steven was ordered to pay $573.48 per month in child support.

Pamela filed a petition to modify the decree on September 9, 2002. In her petition, Pamela alleged that she was getting married on October 10 and that her future husband lived in Council Bluffs, Iowa. Pamela requested that the court enter an order granting her leave to remove Mitchell from Nebraska to Council Bluffs.

Steven filed his answer and cross-application to modify on October 3, 2002. In his answer, Steven asked that Pamela's application to modify be dismissed. In his cross-application, Steven alleged that since the entry of the decree, he has had parenting time of at least one-half of each week. He asked that the district court modify the decree and award the parties joint legal and physical custody, with Steven having primary physical possession, subject to Pamela's rights to parenting time. Steven also asked that neither party be ordered to pay child support because of the joint custody arrangement. Pamela filed her response to the cross-application to modify on October 4, asking that Steven's cross-application to modify be dismissed.

Steven filed an application for a show cause order on December 9, 2002, alleging that in violation of the Uniform Child Custody Jurisdiction Act, Pamela removed Mitchell from the State of Nebraska, without leave of the court, for permanent residence in Iowa. A show cause order was entered on December 10.

On April 1, 2003, counsel for both parties, as well as the parties, were present before the district court for Douglas County when the settlement stipulation was read into the record by Steven's attorney. While the settlement was recorded by a court reporter, the judge was not present. The settlement stated in part: "Child support will be calculated on a joint custody calculation basis and submitted by counsel at a later time. . . . And specifically in regard to the child support, the parties are calling it a deviation based on the parenting time." The stipulation also stated that "the pending application for contempt is dismissed."

Steven filed a motion to compel entry of a modification order on June 18, 2003, alleging that he had yet to receive a signed and approved modification order from Pamela's attorney. Steven then

asked the district court to enter the modification order submitted by his counsel, which order was attached to the motion, with or without the signature of Pamela's counsel. The proposed modification order cited a material change in circumstances, rather than a deviation from the child support guidelines, and established Steven's child support obligation at $178 per month, based on a joint custody calculation.

A hearing was held on July 2, 2003, although no evidence was taken. From the comments of counsel, it is apparent that the parties were at odds, despite the earlier stipulation, as to how the child support should be calculated. Pamela's attorney stated:

> When the record was made before this Court [on April 1], the record does reflect what was indicated was a joint custody calculation, but I indicated to [Steven's attorney] at that time it would have to be calculated pursuant to the Nebraska Child Support Guidelines. [Steven's attorney] wanted to call it joint, that's fine, but it was never the intention of this party that that was the governing principle as to how this was to be calculated. It was the governing principle pursuant to Nebraska Child Support Guidelines and I think [paragraph] J controls the situation.

The trial judge found that paragraph J of the child support guidelines was not applicable in this case. Paragraph J provides that visitation or parenting time adjustments or direct cost sharing should be specified in the support order and that an adjustment in child support may be made at the discretion of the court when visitation or parenting time substantially exceeds alternating weekends and holidays and 28 days or more in any 90-day period. However, the trial court agreed that Steven's method of computing the child support, on a joint custody basis, was applicable.

On July 3, 2003, the modification order was entered, and it is essentially in accord with the stipulation read into the record and later submitted to the court by Steven's motion, with the attached proposed order. Pamela was granted permission to remove Mitchell from Nebraska to Council Bluffs. The district court ordered Steven to pay $209 per month in child support, based on a joint custody calculation, and the parties were to alternate claiming the income tax exemption for Mitchell each year. Steven's visitation was modified so as to extend his weekend

visitation to Monday mornings, maintain Tuesday overnight visitation, extend holiday visitations, and give him visitation during one-half of Mitchell's summer vacation. Pamela now appeals.

## ASSIGNMENTS OF ERROR

Pamela alleges that the district court erred in using the calculation for joint physical custody from the Nebraska Child Support Guidelines in determining child support.

While Steven's brief has a cross-appeal, Steven's assignment of error reads: "If the Court reverses or remands the District Court or finds that the District Court abused its discretion in calculating child support on a 'joint custody calculation basis,' the Court should reverse and vacate the Modification Order in its entirety."

## STANDARD OF REVIEW

Modification of child support payments is entrusted to the trial court's discretion, and although, on appeal, the issue is reviewed de novo on the record, the decision of the trial court will be affirmed absent an abuse of discretion. *Peter v. Peter*, 262 Neb. 1017, 637 N.W.2d 865 (2002).

A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Id.*

## ANALYSIS

*Pamela's Appeal.*

When the district court signed the order after Steven's motion for entry of an order in accordance with the stipulation, the court used a joint custody calculation to determine child support. Pamela contends that such calculation was improper, and Steven asserts that it was correct. The fundamental issue involves the effect to be given to the parties' earlier stipulation about how child support should be calculated, in light of the issue the parties agreed was before the court for decision on July 2, 2003.

Of necessity, we begin our analysis with paragraph C of the Nebraska Child Support Guidelines, which paragraph states in part:

All orders for child support obligations shall be established in accordance with the provisions of the guidelines unless the court finds that one or both parties have produced sufficient evidence to rebut the presumption that the guidelines should be applied. *All stipulated agreements for child support must be reviewed against the guidelines and if a deviation exists and is approved by the court, specific findings giving the reason for the deviation must be made.*

(Emphasis supplied.)

The district court's order references "material change in circumstances," but without naming the nature of such change, and does not include "specific findings" to support a deviation from the guidelines. See Nebraska Child Support Guidelines, paragraph C. Steven asserts that the district court properly calculated child support on a joint custody basis pursuant to the stipulation that there be a " 'deviation based on parenting time.' " Brief for appellee at 18. Steven refers to contractual concepts such as a court's not being free to rewrite the terms of parties' contracts, quoting *Gast v. Peters*, 267 Neb. 18, 671 N.W.2d 758 (2003). However, Steven ignores well-established authority that stipulation for child support is not binding on the court. As said in *Zerr v. Zerr*, 7 Neb. App. 885, 891, 586 N.W.2d 465, 470 (1998), the "[d]isposition of a question pertaining to a child's best interests is not governed exclusively by a parental stipulation." We have also said that a stipulation voluntarily entered into, which appears to be the case here, will be respected and enforced by the courts when such stipulation is not contrary to sound public policy. See *Walters v. Walters*, 12 Neb. App. 340, 673 N.W.2d 585 (2004). *Zerr v. Zerr, supra*, makes it clear that generally, settlements in domestic cases are binding on the court unless unconscionable, but that terms of a settlement concerning support and custody of children are excepted from that rule. Citing Neb. Rev. Stat. § 42-366(2) (Reissue 2004). The public policy at work here is well established—that the child support guidelines control the setting of child support, including whether there are grounds for a deviation. Paragraph C is very specific about the requirements for employing a deviation from the guidelines. And, no deviation was found and articulated by the district court as required by paragraph C. In summary, a stipulation of the parties about how

child support will be determined does not override the requirements of paragraph C of the guidelines. Accordingly, we now turn again to the guidelines.

■ Paragraph L of the Nebraska Child Support Guidelines states that "[w]hen a specific provision for joint physical custody is ordered, support may be calculated using worksheet 3[, 'Calculation for Joint Physical Custody']." However, pursuant to the modification order, Steven was not awarded joint physical custody, but was awarded "reasonable and liberal parenting time." Because Steven was not awarded joint custody, child support calculated on the basis of joint custody is fundamentally incorrect, absent a finding of a deviation which would justify such calculation.

When the stipulation was read into the record on April 1, 2003, it was stated that "specifically in regard to the child support, the parties are calling it a deviation based on the parenting time." However, a deviation based on parenting time is not supported by the record, remembering that no evidence was ever introduced. Moreover, Steven's visitation or parenting time granted in the court's order is essentially that normally given a noncustodial parent and is what has come to be known as *Wilson v. Wilson* visitation, derived from *Wilson v. Wilson*, 224 Neb. 589, 399 N.W.2d 802 (1987). Steven's parenting time was to include alternating weekends from Friday at daycare until Monday morning at school or daycare, each week from Tuesday evening at daycare until Wednesday morning at school or daycare, extended holiday visitations, and one-half of Mitchell's summer vacations. The difference between Steven's visitation and the visitation in *Wilson v. Wilson* is that Steven's alternating weekend visitations are slightly extended, as Mitchell spends Sunday night with Steven and Steven gets Mitchell for Tuesday evenings. Thus, the "parenting time" in the court's order is not so substantially beyond *Wilson v. Wilson* visitation as to justify a joint custody child support calculation, and the fact that the parties stipulated that it does justify such a calculation is neither binding on the trial court nor determinative of the issue. With respect to child support, the facts and the guidelines control the calculation—the parties cannot control the calculation by stipulation, unless the stipulation comports with the guidelines. Any other holding would render the

guidelines superfluous, potentially disadvantage children, and destroy the uniformity the guidelines seek to accomplish.

The district court correctly found that paragraph J of the Nebraska Child Support Guidelines does not apply, because with the exception of the summer months, Steven does not have visitation which "substantially exceeds alternating weekends and holidays and 28 days or more in any 90-day period," as required by paragraph J in providing for "Visitation or Parenting Time Adjustments." However, with the provision for Steven to have Mitchell for one-half of his summer vacation from school, which would be 45 days out of approximately 90 days, Steven should receive a reduction in his support obligation for each month in the summer. Paragraph J allows a reduction of up to 80 percent, and we find that Steven's support for the months of June, July, and August, in 2004 and each year thereafter in which Mitchell spends one-half of the summer with Steven, shall be reduced by 50 percent.

Using the financial information in the district court's child support worksheets, about which there is no dispute, we recalculate Steven's child support obligation under the basic income and support calculation. See appendix A and appendix B. (We have used alternating exemptions of "2" and "3" for Steven and Pamela in alternating years because the parties were in agreement that those were the exemptions to be used and the incomes of the parties make such division appropriate.) Our recalculation shows that Steven's monthly child support obligation is $756.22 (using an average of two calculations—one calculation with Pamela claiming Mitchell as a tax deduction and one calculation with Steven claiming Mitchell as a tax deduction). Thus, the June, July, and August support, after the above-referenced reduction for summer visitation, would be $378.11.

*Steven's Cross-Appeal.*

In Steven's cross-appeal, he does not allege any error by the district court. Rather, Steven requests that in the event we reverse the district court's ruling on support, we reverse the entire ruling on modification and remand all of the issues before the court on April 1, 2003, for trial. Steven's argument, summarized, is that the various issues resolved in the stipulation were interdependent

and that thus, if we reverse the child support component, we must vacate the entire settlement and return the parties to their respective positions before they agreed to the stipulation.

However, as explained earlier, the parties' stipulated settlement agreement, except for the provisions concerning child visitation and support, is binding on the court unless one or more other provisions of that agreement are unconscionable. Both parties were represented and personally present at the second hearing, and no showing of unconscionability was made or suggested; nor is such unconscionability argued by Steven in his cross-appeal.

Additionally, and perhaps of more significance, the record of the July 2, 2003, hearing reveals that the trial court inquired whether its understanding was correct that all issues except child support were resolved per the stipulation and as set forth in the proposed order. Pamela's attorney said yes, and Steven's attorney did not disagree. Therefore, Steven cannot now repudiate the position he took in the district court by asking that all issues be considered unresolved if we reverse the trial court's child support calculation. Steven's position is plainly contrary to the well-established doctrine that an appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. *State v. Porter*, 259 Neb. 366, 610 N.W.2d 23 (2000). The only issue presented to the trial court on July 2 was how child support was to be set—under the settlement stipulation or under the guidelines without any deviation.

Therefore, we reject Steven's cross-appeal and find that the parties' stipulation of April 1, 2003, reaffirmed by them on July 2, is binding on the parties save with respect to child support, as the record does not justify the deviation in child support calculation to which the parties stipulated, and that such child support cannot be calculated on a joint custody basis. Therefore, the district court's order of July 3, giving life to that stipulation, is affirmed except as to our modification regarding child support.

## CONCLUSION

For the reasons stated above, we modify the district court's calculation of child support, which was based on a joint custody arrangement. Steven's monthly child support obligation shall be

$378.11 for June, July, and August 2004 and $756.22 per month thereafter, except that he shall owe $378.11 payments for subsequent months of June, July, and August during summers when he has exercised his extended summer visitation.

We decline to make the change in support fully retroactive to September 2002, when Pamela filed her application to modify and thus started this process, as such an award would be unfair given that Steven is not wholly blameworthy for the delay and should not be subjected to financial hardship because of the length of time it took to resolve this matter. See *Riggs v Riggs*, 261 Neb. 344, 622 N.W.2d 861 (2001). Furthermore, the equities of the situation are such that retroactivity to April 2003, as ordered by the district court, would make Steven indebted by nearly $11,000 for back support. By the same token, Pamela has received inadequate support for over 2 years. Thus, in seeking to strike an equitable balance, we order the change in support to be retroactive to June 1, 2004, the calculation of which support shall include the summer deviation. The district court shall modify its order in accordance with our opinion and adopt the child support worksheets we have attached as appendix A and appendix B.

AFFIRMED AS MODIFIED.

## APPENDIX A

CHILD SUPPORT CALCULATOR
Basic Custody Calculation
Exemptions: Mother (3); Father (2)
One Child

|                                    | Mother      | Father      |
| ---------------------------------- | ----------- | ----------- |
| Total monthly income (taxable)     | $ 4,681.00  | $ 4,736.10  |
| Total monthly income (nontaxable)  | 0.00        | 1,187.20    |
| Tax Deductions                     |             |             |
| Federal income tax                 | $ 438.40    | $ 484.79    |
| State income tax                   | 140.99      | 153.01      |
| FICA tax                           | 358.10      | 362.31      |
| Total tax deductions               | $ 937.49    | $ 1,000.11  |

Other Deductions

| | Mother | Father |
|---|---|---|
| Health insurance | $ 58.98 | $ 0.00 |
| Retirement | 187.24 | 236.93 |
| Child support previously ordered | 0.00 | 0.00 |
| Regular support for other children | 0.00 | 0.00 |
| Total other deductions | $ 246.22 | $ 236.93 |
| Total deductions | $ 1,183.71 | $ 1,237.04 |
| Child tax credit | $ 50.00 | $ 0.00 |
| Monthly net income | $ 3,447.29 | $ 4,686.26 |

Combined monthly net income $ 8,133.55
Combined annual net income 97,602.60

Percent contribution of each parent   42.38%   57.62%

Monthly support (Nebraska Child
Support Guidelines table 1)   $ 1,313.00

Each parent's monthly share   $ 556.45   $ 756.55

## NUMBER OF CHILDREN CALCULATION

| Number of Children | Combined Net Income | Table Amount | Obligor's Percentage | Child Support Due |
|---|---|---|---|---|
| One child | $8,133.55 | $1,313.00 × 57.62% | = | $756.55 |

## APPENDIX B

CHILD SUPPORT CALCULATOR
Basic Custody Calculation
Exemptions: Mother (2); Father (3)
One Child

| | Mother | Father |
|---|---|---|
| Total monthly income (taxable) | $ 4,681.00 | $ 4,736.10 |
| Total monthly income (nontaxable) | 0.00 | 1,187.20 |

| Tax Deductions | | | | |
|---|---|---|---|---|
| Federal income tax | $ | 476.53 | $ | 446.67 |
| State income tax | | 149.24 | | 144.76 |
| FICA tax | | 358.10 | | 362.31 |
| Total tax deductions | $ | 983.87 | $ | 953.74 |

| Other Deductions | | | | |
|---|---|---|---|---|
| Health insurance | $ | 58.98 | $ | 0.00 |
| Retirement | | 187.24 | | 236.93 |
| Child support previously ordered | | 0.00 | | 0.00 |
| Regular support for other children | | 0.00 | | 0.00 |
| Total other deductions | $ | 246.22 | $ | 236.93 |

| | | | | |
|---|---|---|---|---|
| Total deductions | $ | 1,230.09 | $ | 1,190.67 |
| Child tax credit | $ | 0.00 | $ | 50.00 |
| Monthly net income | $ | 3,450.91 | | $ 4,682.63 |

| | | |
|---|---|---|
| Combined monthly net income | $ | 8,133.54 |
| Combined annual net income | | 97,602.48 |

| | | |
|---|---|---|
| Percent contribution of each parent | 42.43% | 57.57% |

| | | |
|---|---|---|
| Monthly support (Nebraska Child Support Guidelines table 1) | $ | 1,313.00 |

| | | | | |
|---|---|---|---|---|
| Each parent's monthly share | $ | 557.11 | $ | 755.89 |

### NUMBER OF CHILDREN CALCULATION

| Number of Children | Combined Net Income | Table Amount | Obligor's Percentage | Child Support Due |
|---|---|---|---|---|
| One child | $8,133.54 | $1,313.00 × | 57.57% = | $755.89 |