IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


ZELLNER V. LATHAM


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


TORRANCE ZELLNER, APPELLANT,

V.

LANTA LATHAM, APPELLEE.


Filed January 31, 2017.    No. A-16-430.


Appeal from the District Court for Lancaster County: STEVEN D. BURNS, Judge. Affirmed as modified.

Stephanie R. Hupp, of McHenry, Haszard, Roth, Hupp, Burkholder & Blomenberg, P.C., L.L.O., for appellant.

John D. Rouse for appellee.


MOORE, Chief Judge, and INBODY and PIRTLE, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

Torrance Zellner appeals from an order of the district court for Lancaster County dissolving his marriage to Lanta Latham. On appeal, Torrance asserts that the court erred in granting sole legal custody of the parties' minor child to Lanta and in its determination of the amount and retroactive application of the child support award. Torrance also asserts that he received ineffective assistance of trial counsel. We affirm as modified.

## II. BACKGROUND

Torrance and Lanta were married on July 23, 2010 in Maryland. The parties have three children; ages 5, 4, and 3 at the time of trial.

In October 2011, Lanta moved with the two older children to Nebraska. Greyson, the youngest child, was born after Lanta moved to Nebraska. Torrance claims that the move was made without his knowledge and that he was unaware that Lanta was pregnant when she moved away. Torrance remained in Maryland.

## 1. MARYLAND CUSTODY AND SUPPORT ORDER

On January 16, 2013, following a hearing on Torrance's complaint for custody and Lanta's counter complaint for limited divorce and other relief, the circuit court for Prince Georgia County, Maryland entered an order establishing custody, parenting time, and child support regarding the two older children. The court denied Lanta's request for a limited divorce. Greyson was not addressed in the Maryland order as the result of his birth in Nebraska, preventing the Maryland court from gaining personal jurisdiction over the child. Jurisdiction over Greyson was subsequently exercised by the district court for Lancaster County as discussed below.

Pursuant to the Maryland order, the court granted the parties joint legal custody of the two oldest children. Lanta was granted sole physical custody of these children. Torrance was granted "liberal visitation" with the two oldest children as set forth by the order. Torrance was ordered to pay transportation costs for the older children's visits to and from Maryland.

Torrance was originally directed to pay $915 per month in child support for the two oldest children pursuant to the January 2013 order. In December 2013, Torrance filed a motion to modify custody and child support after becoming unemployed. On March 14, 2014, the circuit court denied the custody modification request and granted a child support modification with regard to the two older children, reducing the support to $212 per month retroactive to the filing of the motion for modification.

Torrance remained unemployed until April 2015. Torrance received unemployment compensation of approximately $1,750 for five months during this period, from December 2014 until April 2015, prior to regaining employment in April. Upon regaining full-time employment, Torrance was earning $5,208 per month. No change to the Maryland order had been made at the time of trial in the present case.

## 2. NEBRASKA COMPLAINT FOR DISSOLUTION AND CROSS-COMPLAINT

On October 14, 2013, Torrance filed a complaint for dissolution of marriage with the district court for Lancaster County. Torrance requested sole custody of Greyson and that Lanta be ordered to pay child support. On November 6, Lanta filed an answer and cross-complaint requesting custody of Greyson, subject to reasonable parenting time for Torrance, and the payment of child support by Torrance.

On April 22, 2014, the parties filed a temporary stipulation in which they agreed that Lanta should have temporary physical custody of Greyson and "the parties shall share joint legal custody." The stipulation also established that Torrance shall begin paying $100 per month in child support for Greyson, with a 50-percent abatement during June, July, and August, until further order of the court. While not expressly stated in the stipulation, testimony at trial reflected that this amount of support was based upon Torrance being unemployed at that time.

No support was paid for Greyson prior to this stipulation. Although the order approving this stipulation is not contained in our record on appeal, it appears from the testimony at trial that this stipulation was approved by the court.

## 3. TRIAL

On December 11, 2015, a trial was held. The parties entered into a partial agreement, resolving various issues with the exception of custody, parenting time, and child support.

### (a) Custody

The parties agreed that sole physical custody of Greyson would be awarded to Lanta, consistent with the Maryland order regarding the older siblings. It was agreed such custody would be subject to parenting time with Torrance.

However, the parties disagreed on legal custody, with Torrance requesting joint legal custody and Lanta requesting sole legal custody of Greyson. Specifically, the parties differed regarding who would have the power to make a final decision on parenting issues for Greyson in the event of an impasse.

In support of joint legal custody, Torrance testified that he is capable of putting aside any personal differences and communicating with Lanta to make decisions in the best interests of Greyson, despite tension between the parties. Torrance felt such an arrangement would be in Greyson's best interests. Torrance also testified to instances where Lanta failed to make good decisions and inform him of health matters concerning Greyson and the other children. Torrance also claimed that Lanta attempts to impede his relationship with Greyson.

Torrance testified that it would be "wise" for him to have the final authority in the event of a disagreement between the parties. Torrance confirmed that the Maryland order, which granted joint legal custody of the two older children to the parties, does not establish who is to have the final authority in the event of a disagreement. Rather, Torrance testified to his belief that this joint custody order required the parties to work together in reaching decisions.

Lanta's proposed parenting plan requested that she be awarded "primary" legal custody. In support of this request, Lanta testified to the parties' tense relationship and inability to communicate. Lanta attested to having left Maryland to escape physical and emotional abuse by Torrance. Further, she claimed Torrance was overly critical and demanding. Torrance's testimony similarly reflected that the parties do not get along, although he placed blame for such conflict on Lanta.

The parenting plan submitted by Lanta set forth that the parents shall freely discuss choices regarding the children's education, religious upbringing, and medical needs with one another in an effort to reach a consensus. However, in the event of an impasse, Lanta requested that she, as the custodial parent, have the final say in these matters.

Despite her request for primary legal custody of Greyson, Lanta testified that she does not object to joint legal custody as long as she has final authority to make decisions. When asked what a joint legal custody arrangement meant to her, Lanta responded "that (the parties) would communicate . . . regarding things about the kids and (Torrance) would have a say in what the decision is." She confirmed that the parties would discuss matters relating to the health,

education, and welfare of the children. Lanta testified that the parties "try" to comply with the Maryland joint legal custody order for the two oldest children, and she believes they are capable of putting aside personal differences to make decisions for Greyson. Lanta further testified that, in reality, she has been making the final day-to-day decisions with respect to all three children in her role as sole physical custodian.

### (b) Child Support

At the time of trial, Torrance was obligated to pay a total of $312 per month in child support for all three children; $212 for the two oldest children, pursuant to the modified Maryland order, and $100 for Greyson pursuant to the temporary stipulation. These child support obligations were set based upon Torrance's previous unemployment. Since April 2015, Torrance had been earning $5,208 per month from his new employment, continuing to the time of trial. Lanta is employed as a registered nurse, and was earning $4,528 per month from her employment at the time of trial. Lanta was not aware that Torrance had found employment until a week or two before this trial.

Both parties agreed that, according to the child support guidelines, Torrance's monthly share of child support for Greyson is $645. The parties also agreed on the division of medical costs, division of daycare expense incurred by Lanta due to her employment, provision of health insurance, and alternating of the child tax credit.

The parties' disagreement centered on whether Torrance's monthly share of child support for Greyson should be adjusted downward to account for the costs of exercising parenting time.

Lanta proposed a child support payment of $595 per month, agreeing to a $50 per month downward deviation to assist with transportation costs to and from Maryland. Correspondingly, Lanta requested that Torrance pay for all transportation costs in exercising parenting time with Greyson, consistent with the Maryland custody and support order governing the two older children.

Torrance in turn proposed downward deviations from child support totaling $545 per month, resulting in a child support payment of $100 per month for Greyson. Specifically, this total downward deviation included $161 per month as a 3-month abeyance during summer parenting time, $150 per month for the cost of flying Greyson to Maryland four times per year, $137 per month for the cost of summer daycare during visitation, and $97 per month to cover the cost of additional visitation travel by Torrance to Nebraska. Torrance claimed that the requested deviations are "far less" than the actual expenses incurred.

Torrance testified to the cost of transporting Greyson between Nebraska and Maryland, claiming the amount for a round-trip plane ticket was at least $450 per person. Lanta disputed this amount, claiming that she has made the same round trip to Maryland for $250 or less. Torrance testified that his total out-of-pocket cost for exercising parenting time was a minimum of $1,000 per visit. No documentation was offered by Torrance to support his estimate of travel costs.

## 4. NEBRASKA DECREE OF DISSOLUTION

On March 10, 2016, an order was submitted by the district court dissolving the marriage of the parties and establishing custody and child support with regard to Greyson.

Lanta was granted sole physical and legal custody of Greyson subject to parenting time set forth in the order. The court primarily adopted Lanta's proposed parenting plan, which correlates with the parenting arrangement designated in the Maryland order governing the two older children. Torrance was granted parenting time every spring break, every Thanksgiving, half of Christmas break including every other Christmas Day, and all of summer vacation minus the first and last weeks. This arrangement establishes that Torrance will travel four times per year between Maryland and Nebraska. Torrance is required to pick up the children from Lanta at the commencement of each parenting time period, return the children at the conclusion of each period, and cover all transportation costs. The plan sets forth that the parties shall discuss matters relating to Greyson in an effort to reach consensus, while granting Lanta, as custodial parent, the final say in decisions regarding Greyson in the event of an impasse.

Torrance was ordered to pay child support for Greyson in the sum of $645 per month. The court granted Torrance a child support "credit" of $55 per month for transportation costs. Child support was ordered to be retroactive to June 1, 2015, nine months prior to entry of the order. The court did not explain within the decree its decision to order retroactive payment to this date.

In support of the child support credit, the court noted Torrance's testimony that it cost $1,000 per trip per parenting time exchange, with four trips per year pursuant to the current parenting time schedule. The court noted that the $1,000 expense covers all three children. Therefore, of the $4,000 spent each year, the annual cost attributed to Greyson is $1,333. The court found that of this amount, Torrance would normally be responsible for half, or $667. As a result, the court found a downward deviation matching this amount to be appropriate, resulting in a $55 deviation per month.

The court denied Torrance's request for a child support deviation in the form of a 3-month abeyance during summer visitation. The court determined that the deviation was not warranted under the child support guidelines and particular circumstances of this case. No other downward deviations were addressed or granted by the court.

On March 16, 2016, Torrance filed a motion for new trial or to alter or amend the judgment. The court overruled this motion.

Torrance subsequently perfected this appeal.

## III. ASSIGNMENTS OF ERROR

Torrance assigns, restated, that the district court erred in (1) granting sole legal custody of Greyson to Lanta, and (2) ordering the amount and retroactive application of the child support award. Torrance also asserts that he was denied effective assistance of counsel.

## IV. STANDARD OF REVIEW

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally

be affirmed absent an abuse of discretion. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). Similarly, in actions for the dissolution of marriage, an appellate court reviews a trial court's child support determinations de novo on the record to determine whether the trial judge abused his or her discretion. See *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015); *State on Behalf of A.E. v. Buckhalter*, 273 Neb. 443, 730 N.W.2d 340 (2007).

In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015).

An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Schrag v. Spear*, *supra*. A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id*.

## V. ANALYSIS

### 1. LEGAL CUSTODY

Torrance argues that the court abused its discretion in awarding sole legal custody of Greyson to Lanta as opposed to granting joint legal custody to both parties. Torrance asserts that joint legal custody was warranted in this case because the parties have been successful as joint legal custodians of the two older children through the Maryland decree and during the temporary period regarding Greyson. He also points to Lanta's testimony showing her willingness to continue joint legal custody of Greyson. Finally, Torrance argues that maintaining joint legal custody between the parties is in Greyson's best interest.

Joint legal custody is joint authority and responsibility for making major decisions regarding the child's welfare. *Brown v. Brown*, 260 Neb. 954, 621 N.W.2d 70 (2000). See, also, Neb. Rev. Stat. § 43-2922(11) (Cum. Supp. 2015). Sole legal custody in turn establishes that one party will have the final say in such decisions. See Neb. Rev. Stat. § 43-2922(13) (Cum. Supp. 2015).

Courts typically do not award joint legal custody when the parties are unable to communicate effectively. *State v. Anthony W.*, 24 Neb. App. 47, 879 N.W.2d 402 (2016). See, also, *Klimek v. Klimek*, 18 Neb. App. 82, 88, 775 N.W.2d 444, 450 (2009) (court identified communication as an essential requirement for joint legal custody to be successful). However, a trial court's decision to award joint legal or physical custody can be made without parental agreement or consent so long as it is in the child's best interests. *Anthony W.*, 24 Neb. App. 53-54. In *Klimek*, we found that the lower court did not abuse its discretion in failing to find joint legal custody was in the best interests of minor children when the parties had difficulty communicating with each other. *Klimek*, 18 Neb. App. at 88. In *Kamal v. Imroz*, 277 Neb. 116, 759 N.W.2d 914 (2009), the Nebraska Supreme Court affirmed the trial court's decision that

joint legal custody was not in the child's best interests because the parents were unable to communicate face-to-face and distrusted one another.

In addition to awarding Lanta sole physical and legal custody of Greyson, the parenting plan adopted by the district court provided that the parties shall discuss matters relating to Greyson in an effort to reach consensus, while granting Lanta, as custodial parent, the final say in decisions regarding Greyson in the event of an impasse. Upon our de novo review, we cannot say that the court abused its discretion in awarding sole legal custody of Greyson to Lanta or in its decisionmaking provision in the parenting plan.

From our reading of the parties' testimony, it is apparent that they do not get along well with each other. The record reflects tension, bitterness, and poor communication between the parties. Consistent with the foregoing case law, communication difficulties support the decision not to award joint legal custody in this case.

Torrance acknowledges that the primary source of disagreement between the parties at trial centered on the issue of which parent should have final decisionmaking authority in the event of impasse. We find no abuse of discretion in the court's determination that Lanta should have this authority. While the parties share joint legal custody of the two older children pursuant to the Maryland decree, the evidence showed that Lanta had been the parent ultimately responsible for making final decisions regarding these children. Further, Greyson has been under the complete care and custody of Lanta in Nebraska since his birth, and she has been making the final decisions regarding Greyson during the pendency of these proceedings.

The record supports the award to Lanta of sole legal custody and decisionmaking authority concerning Greyson.

Torrance's first assignment of error is without merit.

### 2. CHILD SUPPORT

The paramount concern in child support cases is the best interests of the child. *Incontro v. Jacobs*, 277 Neb. 275, 761 N.W.2d 551 (2009). In general, child support payments should be set according to the Nebraska Child Support Guidelines adopted by the Nebraska Supreme Court, which are presumed to be in the best interests of the child. *Id*. See, also, Neb. Rev. Stat. § 42-364.16; *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015). In determining the amount of a child support award, a trial court must consider the status, character, and situation of the parties and attendant circumstances, including the financial condition of the parties and the estimated cost of support of the children. *Anderson v. Anderson*, supra.

#### (a) Downward Deviations

Torrance argues that the court abused its discretion in denying his requested downward deviations. He requested a total of $545 per month in deviations, including for summer parenting time, transportation costs, and childcare expenses. Instead, the court limited the downward deviation to $55 per month to assist in transportation costs.

In general, child support obligations should be set according to the provisions of the Nebraska Child Support Guidelines. *Gress v. Gress*, 274 Neb. 686, 743 N.W.2d 67 (2007). The child support guidelines shall be applied as a rebuttable presumption. Neb. Ct. R. § 4-203. A

court may deviate from the Guidelines if their application in an individual case would be unjust or inappropriate. *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015); § 4-203(E). See, also, *Wilkins v. Wilkins*, 269 Neb. 937, 697 N.W.2d 280 (court may deviate from the Guidelines when one or both of the parties have provided sufficient evidence to rebut the presumption). Deviations from the Nebraska Child Support Guidelines must take into consideration the best interests of the child or children. *Pearson v. Pearson*, 285 Neb. 686, 828 N.W.2d 760 (2013).

### *(i) Parenting Time Adjustment*

First, Torrance claims the court abused its discretion in denying a downward deviation for his summer parenting time. Torrance sought a deviation of $161 per month, which was calculated by dividing three months of child support totaling $1,935, by 12.

Neb. Ct. R. § 4-210 provides that an adjustment in child support may be made at the discretion of the court when visitation or parenting time substantially exceeds alternating weekends and holidays and 28 days or more in any 90-day period. In addition, during visitation or parenting time periods of 28 days or more in any 90-day period, support payments may be reduced by up to 80 percent at the trial court's discretion.

As noted by the district court, while Torrance has parenting time for three months during the summer, he does not have alternating weekend parenting time. As such, his overall parenting time does not substantially exceed alternating weekends and holidays and 28 days or more in any 90-day period. Thus, Torrance was not entitled to an adjustment in his child support obligation and the district court did not abuse its discretion in declining to make such an adjustment. See *Bevins v. Gettman*, 13 Neb. App. 555, 697 N.W.2d 698 (2005).

The district court also chose not to reduce Torrance's child support payments for the summer months during which his parenting time will exceed 28 days or more in a 90-day period. Again, the guidelines make this reduction discretionary and we find no abuse of discretion by the district court. See *Lucero v. Lucero*, 16 Neb. App. 706, 715, 750 N.W.2d 377, 385 (2008).

### *(ii) Deviation for Transportation Costs*

Second, Torrance claims the court abused its discretion in denying his requested $150 per month downward deviation to cover the cost of air travel necessary to exercise parenting time. The amount of $150 was reached by multiplying the cost of a plane ticket for Greyson ($450) by the four periods of parenting time during the year ($1,800) and annualizing this total ($150).

Alternatively, Torrance requested that Lanta pay for Greyson's transportation, or transport the child to commence parenting time. Torrance also argues that the court abused its discretion in denying a downward deviation of $97 per month to cover costs incurred by him as a result of additional travel during the year outside the parenting plan to visit the children in Nebraska.

The guidelines provide that "[a]ny documented substantial and reasonable long-distance transportation costs directly associated with visitation or parenting time may be considered by the court and, if appropriate, allowed as a deviation from the guidelines." Neb. Ct. R. § 4-210. Only reasonable transportation expenses may reduce or abate a child support obligation. *Pearson v. Pearson*, 285 Neb. 686, 692, 828 N.W.2d 760, 764 (2013). As with other visitation

determinations, the matter of travel expenses associated with visitation is initially entrusted to the discretion of the trial court. *Pearson v. Pearson*, 285 Neb. 686, 828 N.W.2d 760 (2013). Once again, deviations from the guidelines must take into consideration the best interests of the child or children. *Id*.

Upon our de novo review, we find that the court's decision to limit the downward deviation for transportation costs to $55 per month, for an annual total of $660, was not an abuse of discretion. Torrance failed to provide documentation showing substantial and reasonable long-distance transportation costs directly associated with parenting time, as required by the guidelines. Further, there was conflicting testimony between the parties regarding the cost of airfare necessary to transport Greyson. Finally, the record reflects that Torrance had rarely made trips to Nebraska to visit the children outside the specific provisions in the parenting plans. Thus, any requested deviation for additional parenting time travel expense, in addition to being undocumented, is speculative. See *Gress v. Gress*, 274 Neb. 686, 743 N.W.2d 67 (2007) (court's findings regarding the propriety of child support obligations should not be based on costs that are entirely speculative).

The district court did not abuse its discretion in failing to allow these additional adjustments for travel expenses beyond $55 per month.

### (iii) Deviation for Childcare

Third, Torrance asserts that the court abused its discretion in denying a downward deviation of $137 per month to cover employment-related childcare during his summer, Christmas, and spring break parenting time. Torrance testified to incurring $275 per week in such costs during this 12-week period. The total cost divided in half and annualized equates to $137 per month. Alternatively, Torrance requests this court to order the parties to contribute equally to all employment-related childcare expenses.

The Child Support Guidelines do not provide for a deviation from child support for childcare expenses. Rather, § 4-214 provides:

> Childcare expenses are not specifically computed into the guidelines amount and are to be considered independently of any amount computed by use of these guidelines. Care expenses for the child for whom the support is being set, which are due to employment of either parent . . . shall be allocated to the obligor parent as determined by the court, but shall not exceed the proportion of the obligor's parental contribution (worksheet 1, line 6) and shall be added to the basic support obligation computed under these guidelines.

See *Anderson v. Anderson*, 290 Neb. 530, 540, 861 N.W.2d 113, 122 (2015). Thus, childcare expenses are to be allocated as determined by the court and added to the basic support obligation.

On the date of trial, the parties entered into a partial property settlement and custody agreement. Therein, the parties agreed to evenly divide employment-related childcare expenses incurred by Lanta. No provision was included regarding childcare expenses incurred by Torrance. While § 4-214 provides a statutory structure for the division of employment-related childcare expenses, this court will not disturb the agreement entered into by the parties, directing

Torrance to pay half of such expenses incurred by Lanta. The parties could have agreed to split childcare expenses incurred by Torrance, but chose not to do so.

We note that, in addition to the agreement regarding childcare expenses, the parties also agreed to continue providing health insurance for the minor children as long it is available through their respective employment; that Torrance be responsible for half of Greyson's medical expenses not covered by insurance, after Lanta pays the first $480 per calendar year; and alternate the child tax credit. However, the decree did not specifically adopt this portion of the parties' agreement or include any of these provisions, which we find to be plain error.

We find the decree should be modified to reflect the entire agreement of the parties, including the division of employment-related childcare expenses incurred by Lanta, division of medical costs, provision of health insurance, and alternating of the child tax credit.

(b) Retroactivity of Child Support Order

Torrance argues that the trial court abused its discretion in ordering the payment of child support for Greyson retroactive to June 1, 2015, nine months prior to entry of the decree. Torrance also asserts that without a payment plan in the decree for the payment of this retroactive support, the immediate arrearage created by the retroactive order subjects him to various enforcement mechanisms and amounts to an onerous burden.

We note that the issue of retroactivity was not specifically addressed at trial. Lanta did not specifically request it as part of her relief, although she pointed out that Torrance had been paying minimal child support for several months despite regaining employment. Torrance did not testify to an inability to pay retroactive child support or request any type of payment plan during trial.

Whether a child support order should be retroactive is entrusted to the discretion of the trial court and will be affirmed absent an abuse of discretion. *Johnson v. Johnson*, 290 Neb. 838, 854, 862 N.W.2d 740, 752 (2015). The granting of retroactive child support is influenced by the equities of each case. *Riggs v. Riggs*, 261 Neb. 344, 355, 622 N.W.2d 861, 869 (2001). In determining whether to order retroactive support, a court must consider the parties' status, character, situation, and attendant circumstances. As part of that consideration, the court must consider whether the obligated party has the ability to pay the lump-sum amount of a retroactive award. *McDonald v. McDonald*, 21 Neb. App. 535, 840 N.W.2d 573 (2013).

On the other hand, the child and the custodial parent should not be penalized by delay in the legal process, nor should the noncustodial parent gratuitously benefit from such delay. *Johnson v. Johnson, supra*; *Pursley v. Pursley*, 261 Neb. 478, 623 N.W.2d 651 (2001); *McDonald v. McDonald, supra*.

Upon our de novo review, we find that the court's award of retroactive child support to June 1, 2015 was not an abuse of discretion. As previously discussed, Torrance regained employment in April 2015 and began earning a salary of $5,208 per month. During the period between April and the time of trial in December 2015, he was paying only $100 for Greyson under the temporary stipulation. Despite his salary, he continued to pay this minimal amount of support until the district court's March 2016 order. While the court did not expressly state why the June 1, 2015 date was chosen, it is probable that the court took into consideration Torrance's

return to employment in April and the minimal support he was paying for Greyson which was determined on the basis of Torrance being unemployed.

The trial court did not err in ordering the child support be awarded retroactively to June 1, 2015.

### 3. INEFFECTIVE ASSISTANCE OF COUNSEL

Torrance asserts that his trial counsel was ineffective in failing to contest physical custody of Greyson at trial. He claims prejudice as a result of counsel's failure to argue the matter and present evidence of unfitness against Lanta. Torrance highlights his testimony that Lanta had shown poor parental judgment with regard to Greyson as a basis by which his counsel could have argued unfitness and requested physical custody.

A defendant has the right under U.S. Const. amends. VI and XIV, and Neb. Const. art. I, § 11, to be represented by an attorney in all critical stages of a criminal prosecution. *State v. Miner*, 273 Neb. 837, 733 N.W.2d 891 (2007). Such a right does not exist in civil cases. If Torrance was dissatisfied with counsel's performance, he could have sought new counsel.

Torrance's claim of ineffective assistance of counsel is without merit.

### VI. CONCLUSION

Upon our de novo review, we find that the district court did not abuse its discretion in granting sole legal custody and final decisionmaking authority to Lanta, in its determination of the amount of child support, and in its order of retroactive child support. We modify the decree to incorporate the parties' agreement regarding division of childcare expenses, division of medical costs, provision of health insurance, and alternating of the child tax credit. All other provisions of the decree are affirmed.

AFFIRMED AS MODIFIED.