BOBBI L. ZERR, APPELLEE, V. TIMOTHY A. ZERR, APPELLANT.

586 N.W. 2d 465

Filed November 10, 1998.   No. A-97-709.

Brett McArthur and Stefanie Grimm for appellant.

No appearance for appellee.

SIEVERS and MUES, Judges, and HOWARD, District Judge, Retired.

MUES, Judge.

Timothy A. Zerr appeals from an order of the district court for Lancaster County denying his motion to vacate and for new trial. The motion sought to vacate the decree of dissolution filed May 16, 1997, which had approved the parties' property settlement agreement except for the agreed-upon child support amount. We reverse, and remand for further proceedings.

## FACTS

Timothy A. Zerr and appellee, Bobbi L. Zerr, were married in Las Vegas, Nevada, on October 25, 1989. One child was born to Timothy and Bobbi during their marriage, their daughter, Ashley Nicole Zerr, who was born on May 15, 1990. In early 1996, Bobbi filed a petition in the district court for Lancaster County seeking dissolution of her marriage to Timothy, and Timothy soon thereafter entered his voluntary appearance in the case. There is no responsive pleading by Timothy contained in the record on appeal.

When Bobbi filed her dissolution petition, she was represented by counsel. For reasons not evident from the record, Bobbi's counsel withdrew at some point prior to the final hearing of May 8, 1997. When the matter came before the trial court, Timothy appeared with counsel and Bobbi appeared without legal representation.

At the May 8, 1997, hearing, the matter proceeded on Bobbi's petition, with Timothy's counsel calling Bobbi for that purpose and through her offering several exhibits, including a six-page document entitled "Stipulation and Property Settlement Agreement" (stipulation) signed by Bobbi and Timothy on April 2 and a child support worksheet. The stipulation provided, inter alia, that the parties agreed to joint legal custody of Ashley, with Bobbi having primary physical custody subject to defined visitation by Timothy; that the parties would forgo alimony from each other; and that Timothy would pay Bobbi $150 per month in child support plus all of the costs of child care, averaging approximately $120 per month. The stipulation further provided that "[e]ither the Respondent [Timothy] or the Petitioner [Bobbi] agrees to provide health insurance on the minor child depending upon the lower cost," and the parties agreed to divide equally the cost of health insurance for Ashley

if neither of them could feasibly obtain such insurance through his or her respective employment.

Under questioning by Timothy's counsel at the May 8, 1997, hearing, Bobbi testified that the stipulation was fair and equitable to both parties, and she asked that it be approved. No evidence, documentary or oral, was presented with regard to the personal property, real property, vehicles, bank accounts, pension plans, stocks and bonds, and debts which were also divided and allocated as part of the stipulation. In pertinent part, the stipulation also stated:

> 1. EFFECTIVE DATE.
>
> This agreement shall become binding upon the parties and their respective legal representatives, successors, and assigns immediately following the dissolution of their marriage in the pending proceedings, provided that the provisions of this agreement are approved by the Court. In the absence of the granting of a Decree of Dissolution by the Court and approval of [sic] this agreement shall have no force or effect.
>
> . . . .
>
> 18. APPROVAL OF THE DISTRICT COURT.
>
> This agreement shall be submitted for approval by the District Court in which the present proceedings for dissolution of marriage are pending, and if it is acceptable to the Court, it shall become a part of the decree. In the event that either the Court does not grant dissolution of the marriage herein or the Stipulation and Property Settlement Agreement is not approved by the Court, then the entire document shall be null and void and neither of the parties shall be obligated by any of the provisions herein.

Exhibit 1, the child support worksheet offered into evidence by Bobbi and affirmed by both her and Timothy as reflecting the truth, is unsupported by tax returns, wage receipts, or other independent means of wage verification. Timothy's counsel elicited no testimony from Bobbi regarding the parties' employment or the income reflected on exhibit 1, except for a perfunctory, is it "true and correct," to which Bobbi replied, "Yes." Similarly, no testimony was elicited from Timothy by his counsel to explain the figures on exhibit 1.

At the conclusion of each party's testimony, the trial court independently inquired of each of the parties regarding his or her employment and the worksheet, exhibit 1. At the time of the hearing, Bobbi was employed on a part-time basis at a child-care facility. Exhibit 1 shows Bobbi's monthly gross income to be $1,666 and her net income to be $1,361. Timothy's monthly gross income is shown to be $893 and his net $728. Upon the court's inquiry, Timothy testified that he was in the process of starting his own computer consulting business and that the figures for his income on exhibit 1 were only projections because of his company being in a "start-up" phase. He stated that in the year preceding the hearing, he had earned approximately $50,000 through October 1996 at Crete Carrier, where he had worked for 9 years in the computer department. He made approximately the same income in the year prior. He "hope[d]" that he would be at the same income level as at Crete Carrier in his new business in 2 or 3 years. At the conclusion of the hearing, the trial court took the case under advisement, stating: "So that the parties are aware, my concern is the amount of the child support. And based on the testimony here, I believe it to be inadequate."

The trial court's decree of dissolution was filed May 16, 1997. In it, the trial court approved the parties' stipulation, made it a part of the decree by reference, and expressly found that it was reasonable and not unconscionable. At the same time, the court ordered Timothy to pay $579 per month instead of the $150 per month stipulated to by the parties. Consistent with paragraph C of the Nebraska Child Support Guidelines, the trial court appended to its decree its own child support calculations reflecting Bobbi's net income of $1,338 and Timothy's of $2,469.

Timothy filed a motion to vacate judgment and for new trial on May 22, 1997, which was overruled on June 6. Timothy filed his notice of appeal on June 20.

## ASSIGNMENTS OF ERROR

Restated and summarized, Timothy claims that the trial court erred in changing the amount of child support without disapproving the entire property settlement agreement and without

giving the parties a further opportunity to be heard. He also asserts error in the trial court's overruling his joint motion to vacate and for new trial.

## STANDARD OF REVIEW

■ In an appeal of an action for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge, whose judgment will be upheld absent an abuse of discretion. *Davidson v. Davidson*, 254 Neb. 656, 578 N.W.2d 848 (1998).

■ Our law is clear that absent an abuse of discretion, a court has the inherent power to vacate or modify its own judgment at any time during the term at which those judgments are pronounced, and such power exists entirely independent of any statute. *Hyde v. Shapiro*, 216 Neb. 785, 346 N.W.2d 241 (1984).

■ An appellate court will affirm the district court's denial of a motion for new trial absent an abuse of discretion. *Welch v. Welch*, 246 Neb. 435, 519 N.W.2d 262 (1994).

## ANALYSIS

Timothy claims that the trial court erred in changing the child support from the amount which the parties had stipulated to and, at the same time, entering a decree approving the balance of the parties' stipulation. He relies on paragraph 18, which Timothy contends should be read to mean that if the parties' agreement was not accepted in full by the trial court, then the entire agreement was null and void.

■ To promote the amicable settlement of disputes between parties to a dissolution action, the parties may enter into a written "property settlement agreement containing provisions for the maintenance of either of them, the disposition of any property owned by either of them, and the support and custody of minor children." Neb. Rev. Stat. § 42-366(1) (Reissue 1993). The terms of such an agreement, except for terms providing for the support and custody of minor children, are binding on the court unless it finds the agreement is unconscionable. § 42-366(2).

■ In determining whether a proposed settlement in a domestic case meets the statutory requirement of conscionabil-

ity, a trial judge has discretion to request the production of further evidence, but the court is not obligated to do so. See *McWhirt v. Heavey*, 250 Neb. 536, 550 N.W.2d 327 (1996). See, also, § 42-366(2). " 'It is the duty of the parties and their counsel to produce evidence on the issues before the court, and to place this duty on the trial judge would overstep the bounds of judicial propriety.' " *McWhirt*, 250 Neb. at 547, 550 N.W.2d at 335, quoting *Buker v. Buker*, 205 Neb. 571, 288 N.W.2d 732 (1980). Nevertheless, in reviewing a property settlement agreement entered into by the parties, the trial court "is admonished not to regard the agreement lightly but, rather, is required to carefully scrutinize the agreement in order to be sure that neither party takes an unconscionable advantage over the other through fraud." *Colson v. Colson*, 215 Neb. 452, 454-55, 339 N.W.2d 280, 281-82 (1983).

The paramount concern in determining child support is the best interests of the child. *Schulze v. Schulze*, 238 Neb. 81, 469 N.W.2d 139 (1991). Determination of the best interests of a child includes a judicial decision based upon evidence. *Id.* Disposition of a question pertaining to a child's best interests is not governed exclusively by a parental stipulation. *Id.* See, also, *Stuhr v. Stuhr*, 240 Neb. 239, 481 N.W.2d 212 (1992); *Hickenbottom v. Hickenbottom*, 239 Neb. 579, 477 N.W.2d 8 (1991); *Eliker v. Eliker*, 206 Neb. 764, 295 N.W.2d 268 (1980); *Burns v. Burns*, 2 Neb. App. 795, 514 N.W.2d 848 (1994).

Thus, while agreements for child custody and support are not "binding" on the court, as are those involving matters other than child custody and support, even the latter are subject to independent court scrutiny and a finding of conscionability is a prerequisite to their binding effect.

In determining the amount of a child support award, the trial court must consider the status, character, and situation of the parties and the estimated cost of support of their children. *Faaborg v. Faaborg*, 254 Neb. 501, 576 N.W.2d 826 (1998). In doing so, the Nebraska Child Support Guidelines are applied as a rebuttable presumption, and all orders for child support shall be established in accordance with the provisions of the guidelines unless the court finds that one or both parties have pro-

duced sufficient evidence to rebut the presumption that the guidelines should be applied. *Id.*

Timothy readily acknowledges that the trial court was not compelled to accept the parties' stipulation and property settlement agreement. However, he argues that such agreements are the result of negotiated settlements and if a district court decides not to approve a provision in such an agreement, the paragraph

> proclaiming the entire agreement null and void operates to protect the parties and let them start negotiating again to form a new agreement, or in the alternative, go to trial. This type of provision keeps the court from being burdened with cases on the trial dockets and it encourages settlement.

Brief for appellant at 9.

It is beyond dispute that property settlement agreements are a matter of negotiation and that negotiation, by definition, is a "give and take" process. Moreover, experience and common sense suggest that all aspects of such agreements—property, debt, alimony, custody, and child support—are interconnected to some degree in the settlement process. Stated another way, the parties reach a compromise, with each part of the agreement being consideration for the other. The agreement here speaks to that concept: "13. ENFORCEMENT. This agreement and the provisions thereof rest upon valuable consideration moving from each of the parties to the other, and shall be binding upon each of the parties and shall be enforceable by either party in any Court or in any manner prescribed by law."

While paragraph 18 of the stipulation does not expressly provide that if any part is rejected, the whole is null and void, that is the only reasonable construction to place on it. Naturally, if any part is rejected, the stipulation is "not approved." And if not approved by the court, "the entire document shall be null and void." In contract parlance, the stipulation contemplates that its parts shall be common and interdependent, thus rendering it "entire" rather than "severable" or "divisible." See 17A C.J.S. *Contracts* § 331 (1963). Such provisions are not unusual to agreements generally or to property settlement agreements in particular. As to the latter, they do not interfere with the district court's duty to independently scrutinize the property, child cus-

tody, and child support issues. Indeed, it seems to us that restricting the use of this type of provision in property settlement agreements would unreasonably inhibit the parties' freedom to contract and adversely impact the resolution of divorce cases through the settlement process.

Bobbi appeared without counsel at the final hearing. The stipulation provides:

12. ATTORNEYS.

A. Each of the parties expressly certifies that they have entered into this agreement upon mature consideration with sufficient opportunity to obtain the advice of counsel; that consent to the execution of this agreement has not been obtained by duress, fraud, or undue influence of any person; and that no representations of fact made by either party to the other have been relied upon except as expressly set forth herein.

B. The parties agree that this Stipulation and Property Settlement Agreement is fair, reasonable, equitable and is not unconscionable.

The record made below does not disclose whether Bobbi, unrepresented at the May 8, 1997, hearing, obtained the advice of counsel before affixing her signature to the stipulation. Under these circumstances, the trial court properly scrutinized the agreement to determine that no unconscionable advantage was obtained by Timothy over Bobbi through fraud, intimidation, ignorance, passion, or improvidence. See *Robbins v. Robbins*, 3 Neb. App. 953, 536 N.W.2d 77 (1995). But there is no indication in the record that any of those grounds caused the rejection of the child support agreed upon. Instead, the record suggests that the parties' child support figure was rejected because the court did not accept the projected income figures for Timothy.

Timothy is not challenging the trial court's authority to independently review the parties' child support figure and to reject it. Rather, his argument is that the court erred in rejecting a portion of the stipulation and, *at the same time*, accepting the rest of the stipulation and basing the decree on it.

If the disapproved portion of this agreement had involved alimony or a property-debt issue, few would question the merit

of Timothy's position. For example, if the court had taken the entire case under advisement and later entered a decree which rejected the parties' stipulation on waiving alimony and instead awarded Bobbi $1,000 per month alimony for 10 years, and approved everything else, the unfairness to Timothy would be patent. In that instance, whatever consideration Timothy gave Bobbi for her waiver of alimony would still flow to Bobbi. The consideration he was to receive—the waiver—would be denied to him. A more appropriate course in that circumstance, if the court deemed the alimony waiver to be unconscionable, would be to disapprove the entire agreement, notify the parties, and order or grant them an opportunity to adduce additional evidence on the issues presented or to present a new agreement. See § 42-366(3) (upon finding that parties' property settlement agreement is unconscionable court "may request the parties to submit a revised agreement or the court may make orders for the disposition of property, support, and maintenance"); § 42-366(8) ("[i]f the parties fail to agree upon a property settlement which the court finds to be conscionable, the court shall order an equitable division of the marital estate").

Admittedly, agreements for child custody and child support are treated somewhat differently than those for property and alimony issues under our divorce jurisprudence. However, a contract containing an "all or nothing" provision such as the one here also compels a course of action similar to the one stated above when an agreement on custody or support is rejected. When the court rejected Timothy and Bobbi's agreement on child support, it abused its discretion by deciding the rest of the issues based on the stipulation. The parties' stipulation, by its terms, became null and void when a portion of it was rejected. Because the record made for purposes of obtaining approval of the property settlement agreement was woefully inadequate to make any reasonable independent determination of alimony, division of property, or debt allocation issues, a decision upon all issues should have awaited the presentation of additional evidence or a new stipulation.

Here, the district court took the entire case under advisement at the conclusion of the May 8, 1997, hearing. Although there was concern expressed at the closing of the hearing over the

adequacy of child support, it was the court's decree that first advised of the finding of the court that the stipulation had been disapproved regarding the child support issue but enforced as to everything else. At that point, Timothy's obvious recourse was limited to seeking a vacation of the decree or new trial on the basis of paragraph 18 of the stipulation. This is the procedure he followed, and the court abused its discretion in not granting the motion.

## CONCLUSION

The trial court abused its discretion in entering a decree based upon the parties' stipulation. The stipulation was conditioned upon its being approved in its entirety, and the court rejected a portion of it. Timothy's motion to vacate or for new trial should have been granted. The judgment of the district court is reversed, and the cause is remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.