Rose, J.,
dissenting:
I disagree with the majority’s conclusion that the contract allowing the birth mother continued contact with the adopted child is unenforceable. The majority’s decision abrogates the appellant’s freedom to contract, which this court should refrain from doing unless absolutely necessary.[1]
As the majority notes, NAC 127.210(4)(c) authorizes child-placing agencies to offer open adoptions allowing continued contact between the adoptive family and the biological parent. Additionally, on its face, NRS 127.160 does not prohibit agreements like those permitted by NAC 127.210(4)(c). Thus, Nevada has no laws forbidding the continued contact agreement that these parties freely entered into prior to the adoption;[2] and, in fact, Nevada expressly permits such agreements.
I also believe it is patently unfair to have a biological parent agree to the adoption of her or his child on the basis that continued contact will be permitted, but upon approval of the adoption, refuse to enforce the continued contact agreement. A parent may specifically agree to an adoption of a child based on the ability to have periodic contact with the child. The enforcement of the adoption agreement without also recognizing the contact provision *978 leaves the biological parent with an adoption she or he never would have agreed to otherwise. We should not permit birth parents to be so misled.
Accordingly, I conclude that considerations of both fairness and freedom to contract justify the enforcement of the continued contact agreement.[3] Whether a natural parent has breached the continued contact agreement or relinquished the right to continue contact is an issue left to another day.
Therefore, I respectfully dissent.

 See My Fair Lady of Georgia v. Harris, 364 S.E.2d 580, 581 (Ga. Ct. App. 1987) (observing that public policy requires that courts “not lightly interfere with the freedom of parties to contract” (internal quotation marks omitted)); Zerr v. Zerr, 586 N.W.2d 465, 470-71 (Neb. Ct. App. 1998) (concluding that because the agreement was fair and did not interfere with the district court’s duty to independently scrutinize the property, child custody, or child support issues, the parties’ freedom to contract would be unreasonably inhibited if such an agreement was not enforced).

 See Veness v. Midland Risk Ins. Co., 732 N.E.2d 209, 211 (Ind. Ct. App. 2000) (concluding that the importance of the freedom to contract demands that the court not find a contract unenforceable unless it contravenes the clear and unambiguous language of the statute).

 See Miller v. A & R Joint Venture, 91 Nev. 580, 582, 636 P.2d 277, 278 (1981) (concluding that public policy does not require that an exculpatory lease provision not be enforced when it was freely contracted to by the parties and was thus a valid exercise of their freedom to contract); see also Home Shopping Club v. Roberts Broadcasting, 989 S.W.2d 174, 179 (Mo. Ct. App. 1998) (observing that it is in the public’s best interest to enforce contractual rights and obligations when parties exercise their freedom to contract within the confines of the law).