IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

ANDERSON V. ANDERSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

AMANDA J. ANDERSON, NOW KNOWN AS AMANDA J. SCHAAF, APPELLEE,

V.

RYAN J. ANDERSON, APPELLANT.

Filed November 23, 2021.    No. A-21-175.

Appeal from the District Court for Holt County: MARK D. KOZISEK, Judge. Affirmed.

Bergan E. Schumacher, of Bruner, Frank, Schumacher & Husak, L.L.C., for appellant.

Allison Rockey Mason, of Copple, Rockey, Schlecht & Mason, P.C., L.L.O., for appellee.

MOORE, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

### INTRODUCTION

Ryan J. Anderson appeals from an order of the district court for Holt County which denied his complaint to modify custody of the two children he shares with Amanda J. Anderson, now known as Amanda J. Schaaf. He specifically assigns and argues that the district court should have granted him sole legal and physical custody of the children. Ryan also assigns as error the court's award of attorney fees to Amanda. For the reasons set forth below, we affirm.

### BACKGROUND

Amanda and Ryan were married in April 2008. The parties are parents to two children, Wyatt, born in 2007, and Shelby, born in 2009. In October 2011, the marriage was dissolved and an agreed upon decree was entered awarding Amanda sole legal and physical custody of the children subject to Ryan's parenting time. Ryan's parenting time included every other weekend, from Friday to Sunday, an alternating holiday schedule, and 6 consecutive weeks during the

- 1 -

summer. An order modifying the decree was entered on November 5, 2012, which increased Ryan's child support payments to $837 per month but did not modify his parenting time with the children.

On September 20, 2019, Ryan filed the operative complaint for modification seeking legal and physical custody of the children. Ryan alleged that several material changes in circumstances had occurred. Specifically, Ryan asserted (1) Amanda was not providing a safe environment for the children and had exposed the children to dangerous situations, (2) Amanda was not meeting the children's emotional, financial, and physical needs, and (3) the children, now, desired to live with him. He further requested that if custody was modified, child support should be recalculated. Amanda, acting without counsel, filed a response to the complaint to modify generally denying the allegations and requesting that the complaint be dismissed.

Prior to trial, Amanda was served with discovery documents, including requests for admissions. These requests for admissions included requests that Amanda admit that it was in the best interests of Wyatt and Shelby for Ryan to be awarded sole physical and legal custody. Amanda did not complete the requests for admissions. At a subsequent hearing held March 9, 2020, in which Amanda did not appear, Ryan put forth evidence that Amanda was served with the requests and did not respond to them. The district court deemed the requests admitted.

Trial was ultimately held on December 21 and 22, 2020. By this time, Amanda was represented by counsel. Ryan and Amanda testified extensively. Ryan also presented testimony from his mother, father, and fiance. Amanda also presented testimony from her father, as well as the children's school principal and guidance counselor. Wyatt and Shelby, 13 and 11 respectively at the time of trial, were both interviewed by the court in camera with counsel present. By agreement of the parties, the district court ordered that the children's testimonies were not to be shared with the parents. We will only discuss the children's testimony generally and as necessary.

At the time of trial, Amanda lived with her husband, Trent Schaaf, and their 5-year-old daughter, Ryli, in addition to Wyatt and Shelby, in a two-bedroom "trailer house" on 200 acres of ranch land they owned in rural Holt County. They also owned a three-bedroom home in Inman. However, they had primarily lived in the trailer house on the ranch for the year prior to trial. Shelby and Ryli share one bedroom and Amanda and Trent share the other bedroom. Amanda explained that Wyatt had an area in what would have been the dining room where he sleeps on a futon and had a dresser. She admitted that he did not have privacy at the present time. Amanda and Trent operate a cow/calf operation on the property and also raise chickens and goats on the property. Amanda explained that their current living arrangement is temporary until they are able to build a new house on the property. No evidence was offered as to when the house would be built.

In addition to working on the ranch, Amanda is employed full time as a registered nurse. Trent also works full time as a driver for UPS. Ryan testified that he lived in Grand Island and was employed full time as a street maintenance worker for the city of Grand Island. He lives in a three bedroom home owned by his fiance.

The evidence demonstrated a number of areas of disagreement between the parties. Ryan contends that the children are required to do an excessive amount of chores in their mother's home. Ryan does not require the children to do a regular set of chores at his house due to the limited time he has with them. At Amanda's residence, the children had regular responsibilities. Shelby was expected to help with dishes, clean the floor, and fold laundry. Wyatt regularly performed outside

- 2 -

chores such as watering the chickens and goats, and providing hay to the cows. Amanda also explained that the children only had to perform these chores every 2 to 3 days and that they could complete them in 15 to 20 minutes. The children indicated that the chores they did were more frequent, but did not take a significant period of time to complete.

Denise Meyer, the school counselor, testified that Shelby previously complained to her that she has too many chores and that she would get into trouble if she does not complete them. Ryan believed that the chores took away time that the children should have been devoting to homework. Amanda testified that the children rarely brought schoolwork home to work on. Her testimony was confirmed by the children. Amanda testified the children had ample time to complete any schoolwork they did bring home.

Ryan alleged that there were incidents involving Trent and the children that he categorized as abuse. Although Ryan has not seen the incidents firsthand, he stated that according to Wyatt and Shelby, Trent had thrown things at them and dunked Shelby's head underwater. Ryan's mother and father also testified to being told that Trent had put Shelby's head underwater as a method of punishment for excessive crying. Ryan reported the incident where Shelby's head was placed underwater to the Department of Health and Human Services as child abuse; however, he does not believe that they are pursuing the allegation any longer.

The children's testimony only partially corroborated the foregoing testimony. Amanda denied that Trent ever put Shelby's head underwater as a form of discipline. Rather, she explained that Shelby had "night terrors" and this incident occurred as a result of such an event. Shelby became very hot when she had night terrors and was hard to rouse from her sleep. On this occasion, they carried Shelby to the bathroom and Trent put cool washcloths and towels on her back and neck to try to cool her down. Amanda explained that Shelby was upset upon waking because she was in a different room and had had cool and wet applications of a washcloth. Ryan testified that Shelby has not had night terrors at any time while in his care.

Ryan also expressed concern about Trent's anger. Ryan testified that there was an incident where Trent "got up in [his] face" and threatened him. Meyer, the school counselor, also testified that Shelby disclosed to her that Trent yells a lot. Amanda conceded that she has seen Trent spank both Wyatt and Shelby as a form of discipline. However, Amanda stated that she has not observed that the children were afraid of Trent and that spanking was only used as a "last resort" for discipline. With respect to other allegations regarding Trent's anger, she explained that Trent is a loud person but that when he raises his voice at the children, it is frequently at a time where he is concerned for their safety. Although she conceded that she and Trent argue in front of the children, she denied that any of their arguments get physical. The children's testimony was mixed on this issue, but did acknowledge that Trent does yell frequently.

Ryan testified that both children have requested to live with him. Amanda testified that neither of the children had expressed a desire to move to her. In their in-camera testimony, only Shelby expressed a desire to live with Ryan. Shelby also told the court that Wyatt does not want to live with Ryan. The court found that Wyatt was of sufficient age and comprehension to allow consideration of his opinion. The court did not find Shelby to be of adequate comprehension and maturity so as to allow consideration of her wishes.

Ryan testified as to his concerns about Amanda's neglect of the children's vision care. Ryan testified that he learned that Wyatt needed glasses in 2013 or 2014 and that he and his fiance

took Wyatt to an optometrist in order to obtain glasses. According to Ryan, he learned through Wyatt that Amanda threw the glasses away. Ryan also presented medical records indicating that Wyatt did not wear his glasses for a few months in 2016 and that his glasses were broken for most of the year in 2019. According to the medical records, Wyatt was diagnosed with astigmatism and needed to wear glasses on a full-time basis. Ryan also presented evidence that Shelby did not receive an eye exam from an optometrist until shortly before the trial.

Amanda's testimony was in conflict with Ryan's. She disputed that she threw Wyatt's original glasses away and instead testified that the glasses were in a filing cabinet, in perfect condition. Amanda testified that the records were inaccurate with respect to Wyatt not wearing glasses in 2016 and reflecting that the glasses were broken in 2019. She explained that Wyatt refused to wear his glasses at school. Amanda also testified that Wyatt only needs his glasses to view the board at school. Because Wyatt does not like to wear glasses at school, Amanda and Trent have given him the option to wear contacts which he is now beginning to use. Amanda conceded that Shelby did not receive an eye exam from an optometrist until 2019 but noted that she received regular eye exams at school, none of which gave any indication of vision problems. Amanda testified that Shelby did not report any issues with respect to her vision, but did at some point report experiencing headaches when she would read. Amanda took Shelby to an optometrist close to trial. According to Amanda, Shelby's vision was determined to be 20/20, but the optometrist found that Shelby needed to wear glasses with prisms embedded therein to train her eyes to remain focused forward when they relax. Her eyes were drifting apart when at rest, leading to the headaches.

Ryan expressed concern about Amanda not taking care of the children's dental needs as well. Ryan presented evidence that the children did not have dental appointments in 2015, 2016, and 2018. Specifically with respect to Wyatt, Ryan testified that Wyatt had needed braces for at least 2 years but was only recently seen by an orthodontist. Ryan explained that he had a discussion with Amanda about Wyatt obtaining braces.

Amanda testified that during the times when the children did not have dental appointments, the children's teeth were examined by a group that performed fluoride rinses and educates children about caring for their teeth at school. Amanda testified that she did not delay getting Wyatt braces but that Wyatt needed to complete a series of steps, including needing to have baby teeth pulled before he could obtain braces. Both parties testified that a program of orthodontic treatment had been devised and that Wyatt was in the process of receiving braces. Neither Ryan nor Amanda testified to the children having cavities or any other dental issues since the decree was entered.

Ryan testified as to his concerns that Amanda and Trent could not provide for the children's financial needs. He received letters from the school that during the 2019-20 school year, the children owed money on their lunch accounts. There was a negative balance for the school lunch account in the amount of approximately $374. Ryan contacted the school and created a separate lunch account with his money to ensure that the children could eat lunch at school. The school principal explained that when children at the school did not have money to pay for the school lunches, the school provides an alternate lunch that is less expensive than the normal meal. The principal testified that Wyatt and Shelby had this alternate lunch once or twice. When the principal explained to Wyatt and Shelby that they were to eat this alternate lunch, she observed that they

were very upset by it. The children also testified that they were embarrassed to have to eat the alternate lunch. However, everyone agreed that the children never went without lunch at school.

Amanda explained that during the 2019-20 school year, they were unable to pay the balance on the school lunch account. She explained that she was a full-time student and only working part time. During the same period, Trent was suspended from his job due to an accident he was involved in while working. He was not paid for approximately 1 month. In addition, Amanda had a medical procedure performed and a miscarriage. She missed a significant amount of work as a result. Amanda further explained that they did not have the money to pay off the lunch account in its entirety but agreed to a payment plan with the school to pay off the school lunch account. Amanda and Trent have paid the entire lunch account.

Ryan also presented evidence regarding multiple civil judgments entered against both Amanda and Trent during the 5 years preceding the modification proceedings. While many of the judgments were for only a few hundred dollars, there was a civil judgment entered against Trent in the amount of $20,432.13. The district court received these judgments into evidence but iterated to Ryan that while it was receiving the evidence, it was going to place "very little" weight on these judgments.

During her testimony, Amanda offered an explanation as to the multiple civil judgments entered against her and Trent. In 2015, following the birth of Ryli, Amanda was hospitalized for 2 weeks and unable to work for 3 months. Upon returning to work, she was only able to work part time for the first 6 weeks. Following this convalescence Amanda made the decision to become a nurse. This required her to attend Northeast Community College for 1 year in order to take classes needed to enter nursing school. She then attended nursing school for 2 years before becoming an RN in 2020. As a full-time student she could only work part time during this 3-year period. During this period, she also had further medical issues surrounding another pregnancy which resulted in an influx of medical bills and lost income due to complications and the ultimate loss of the twins she had carried. She testified that her health issues are resolved now and she is in a much better position financially.

At the time of trial, she was working approximately 36 hours per week and is paid between $25 and $28.75 per hour depending on whether she is working daytime, nighttime, or weekend shifts. Amanda testified that she and Trent had not contested the judgments against them and had rejected advice to seek bankruptcy protection. She testified that many of the judgments had been paid and that she and Trent planned to pay off all of the judgments now that their income had stabilized and increased.

Ryan's allegations with respect to Amanda and Trent failing to provide a safe environment centered on his concern that Wyatt was operating a tractor and other vehicles at the ranch. Ryan opined that he did not think it is safe for Wyatt to drive vehicles without adult supervision. Ryan admitted that he has never personally observed Wyatt's driving skills but has observed videos on Wyatt's phone taken while he was driving the tractor. Ryan conceded on cross-examination that he does not know if Wyatt received any training about operating the vehicles, nor does he know what the rules about operating the vehicles are while in Amanda's care.

Amanda testified that Wyatt is allowed to operate their tractor, a pickup, and a four-wheeler, but may only drive them on their property. The primary purpose for driving the tractor and pickup have to do with ranch related chores and responsibilities such as providing hay

to the cattle. Amanda testified that she and Trent have both provided training to Wyatt about operating these vehicles. It was noted at trial that as of his next birthday, Wyatt would be eligible to apply for a school permit.

Ryan also testified that the children were struggling academically while in Amanda's care. Ryan explained that if he were to receive custody he would assist the children with their homework to improve their grades in subjects that they struggled with. On cross-examination, however, Ryan conceded that he has not attended any parent-teacher conferences and that until it was brought out at trial, he did not know that Wyatt has had an individualized education plan (IEP) for several years. He did state that he had called and talked to teachers on occasion. He also stated he had full access to the children's education records online, but had never reviewed them such as to discover the information regarding the IEP.

Amanda testified that she does not believe the grades for the children are as important as the efforts the children make in school. She also testified that she does not expect her children to be straight "A" students. She explained that the kids are of average capabilities and she expects their grades to be reflective of that. Amanda explained that due to Wyatt's struggles with school, he underwent tests which resulted in the adoption of an IEP. She also pointed out that while both children have struggled in a couple areas, they have received A's and B's in most of their subjects. Their school records bear out this testimony.

Meyer, the school counselor, also confirmed that she has not talked with Ryan about how the children are performing in school. The school principal also testified as to the details of Wyatt's IEP. She confirmed that she has not had a meeting with Ryan regarding the details of the IEP.

Outside of her responses to Ryan's allegations, Amanda testified that both children were involved in a variety of activities. Both kids were involved in youth sports programs and 4-H. In addition, Shelby participated in dance. Wyatt participated in FFA. Both children showed animals in the county fair. She further testified to the presence of extended family in the area who provided additional support to the children.

The district court entered its order on February 11, 2021, denying Ryan's request for modification. The district court determined that Ryan failed to show that any material change of circumstance had occurred.

The district court addressed and rejected each of the specific allegations that Ryan raised. First, the court determined that Wyatt's operation of tractors and other vehicles while on the ranch was not "shocking nor unimaginable" by a child who "appeared to be mature enough to operate the equipment in the manner that he does." The court further found that the evidence failed to establish that Trent's behavior amounted to abuse or negatively affected the children. The court noted that the past financial struggles had only affected the children insofar as them having to eat a different school lunch due to a negative balance on the lunch account. The court found that this issue did not constitute a material change in circumstances because the negative balance occurred due to circumstances that were not likely to occur again. Next, the district court determined that there was no evidence that showed Amanda compromised the children's vision and dental health by not having more frequent visits. In addition, the district court determined that there was evidence to show that Amanda was appropriately meeting the children's visual and dental health needs. The district court also explained that Wyatt not having his own room in Amanda's current residence was not a material change in circumstances.

With respect to the children's desires as to where they wished to live, the district court found that Wyatt had reached an age of comprehension to express his wishes and desires and had stated his preference to live on the ranch with Amanda. The district court determined that Shelby has not reached the age of comprehension. The district court observed that Shelby's reasons for wanting to live with Ryan were "rather shallow and failed to show she had given much serious thought to the significance of a move and how it might impact herself and her family." As such, the district court did not place weight on Shelby's opinion.

Pursuant to the agreement of the parties, the court recalculated child support based on the parties' current income. This computation resulted in a reduction of Ryan's child support obligation. Finally, the court awarded Amanda $7,500 for attorney fees she had incurred pursuant to the modification action. However, the court deducted $3,360 from this award to offset childcare expenses Ryan had previously paid for a period of time that the children were not receiving childcare.

Ryan now appeals to this court.

## ASSIGNMENTS OF ERROR

Ryan assigns and argues that the district court erred in denying his request for modification because it did not give sufficient weight to the requests for admissions that were deemed admitted and because it failed to find a material change in circumstances. Ryan also assigns and argues that the district court erred in not ordering Amanda to pay child support. Finally, he assigns and argues that the district court erred in awarding Amanda attorney fees.

## STANDARD OF REVIEW

Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion. *Windham v. Kroll*, 307 Neb. 947, 951 N.W.2d 744 (2020).

In an action for modification of a marital dissolution decree, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Tilson v. Tilson*, 307 Neb. 275, 948 N.W.2d 768 (2020).

A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Stephens v. Stephens*, 297 Neb. 188, 899 N.W.2d 582 (2017).

## ANALYSIS

Ryan first argues that the district court erred in denying his request for modification. Custody of a minor child will not ordinarily be modified absent a material change in circumstances, which shows either that the custodial parent is unfit or that the best interests require such action. *Jaeger v. Jaeger*, 307 Neb. 910, 951 N.W.2d 367 (2020). Specifically, the movant must show two elements: (1) since entry of the most recent custody order, there has been a material change in circumstances that affects the child's best interests and (2) that it would be in the child's best interests to change custody. *Id.* It is the burden of the party seeking modification to show a material

change in circumstances. *Id.* Thus, as a threshold issue, Ryan had the burden to show that a material change in circumstances occurred.

*Material Change in Circumstances.*

In the present case, the district court determined that there was not a material change in circumstances and denied Ryan's request for modification. Upon our de novo review of the record, we find no abuse of discretion in this finding.

A material change in circumstances is the occurrence of something that, if it had been known at the time the most recent custody order was entered, would have persuaded that court to decree differently. *Jones v. Jones*, 305 Neb. 615, 941 N.W.2d 501 (2020). Before custody is modified, it should be apparent that any material change in circumstances alleged will be permanent or continuous, not merely transitory or temporary. *Id.*

Ryan's allegations that Amanda was not able to support the children's financial and physical needs were not supported by evidence that any of these issues would be permanent or continuous. To the contrary, the evidence showed that these issues were temporary. While Ryan presented significant testimony and evidence with respect to the issue of Amanda not being able to pay off the children's lunch accounts in 2019-20 and that she and Trent had both had judgments entered against them, he presented no evidence that either demonstrated any serious repercussions to the children or that indicated that these financial problems were likely to occur again. Amanda conceded that she had been behind in the payment for school lunches. However, she explained that the nonpayment occurred because of a confluence of events over the past few years that was unlikely to occur again. Specifically, Amanda was working only part time while attending nursing school full time, there were unexpected medical bills, and Trent had a temporary loss of his income. Added to those issues were separate periods where Amanda could not work due to health issues including two pregnancies. Amanda is, now, working full time and earning more money in her new profession. She testified that she is ahead in the payments for the lunch account and that she and Trent are working on paying off their obligations.

Ryan raised the issue of Wyatt not having his own separate room presently in Amanda's home as a repercussion of Amanda's inability to provide proper support. Although Wyatt currently does not have his own room in Amanda's current residence, Amanda testified that their current living arrangement was merely temporary and that they had plans to construct a new home which would replace the trailer house they have on the ranch and their house in Inman. Moreover, the testimony of Amanda, Wyatt, as well as the school counselor and school principal demonstrated that Wyatt enjoys living on the ranch and has aspirations to be a rancher. Accordingly, we find no abuse of discretion in the district court's findings that the children's housing is not so detrimental to their interests that it rises to the level of a material change of circumstances. Moreover, we note that to the extent that the present house is less than optimal, the evidence indicates that it is not intended to be the family's permanent residence.

The most concerning of Ryan's allegations is that Trent abused Shelby by placing her head under the faucet when she was upset. Ryan and his mother testified as to their understanding of this incident based on their conversations with the children. The children gave contradictory testimony with respect to this incident, one claiming it occurred and the other stating it did not. Amanda also explained that this incident occurred when Shelby had night terrors and did not occur

- 8 -

in the manner that Ryan described. Instead, she explained that she and Trent placed washcloths and towels on Shelby's neck to cool her off. These cool towels woke Shelby up, leaving her disoriented. The school counselor explained that Shelby disclosed specific negative comments regarding Trent but did not mention any claims of abuse. We give weight to the fact that the district court heard and observed the witnesses testify at trial and assess their ability to have seen and heard the events about which they testified. The district court did not find the evidence sufficient to consider the actions of Trent to constitute abuse. We find no abuse of discretion in the district court's findings.

The remaining allegations that Ryan raises concerned the physical safety of the children on the ranch, their health, and their educational progress. Specifically, Ryan believes that it is unsafe for Wyatt to operate vehicles on the farm without supervision or training. He believes that the children are being required to do an excessive number of chores, which among other things, keeps them from doing their homework. He explained how he thinks Amanda's actions are contributing to the children struggling academically. Finally, he contended that Amanda had not made sure that the children received adequate dental and vision care.

Amanda's testimony was in conflict with all of Ryan's contentions. Amanda testified that she and Trent trained Wyatt in how to operate the vehicles and had observed him to operate them safely. Amanda testified as to the limited scope and duration of the chores that the children were required to do. Amanda testified fully about the children's dental care and the fact that they had not experienced issues with cavities. She also explained the steps that had to be completed before Wyatt could obtain braces. We do note our concern that Amanda reported Shelby was having headaches whenever she read, but only recently had this problem addressed by an optometrist. However, Amanda did testify that she expected that Shelby would receive prescription glasses with prisms to correct the issue. As to the children's education, Amanda did not deny that the children have struggled with some subjects. However, the evidence demonstrates that she had assisted the children with their work, is involved in their educational programming, and communicates frequently with the school regarding their progress. In contrast, while there was some evidence of Ryan talking with school personnel, the evidence demonstrated that he has not been closely engaged in their educational programs as evidenced by his lack of knowledge about Wyatt's IEP. Based on the evidence adduced at trial we find no abuse of discretion in the district court's findings that none of these issues constitute a material change of circumstances.

While the district court did not make a specific credibility determination on the record, it is clear based on its decision to deny the request for modification and its reasoning within its order that it generally believed the testimony of Amanda and her supporting witnesses over the testimony of Ryan and his witnesses. In child custody cases, where the credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). As the trier of fact, the district court observed the witnesses' demeanor and was in the best position to judge the veracity of their testimony. See *id.* We, therefore, find no abuse of discretion in the manner in which it weighed the evidence, nor in its ultimate finding that Ryan failed to prove a material change of circumstance.

*Requests for Admissions.*

Prior to trial, Ryan submitted requests for admissions to Amanda. Included were requests that Amanda admit that it was in the best interests of the children for Ryan to be awarded sole legal and physical custody of the children. Amanda did not file responses to Ryan's requests resulting in Ryan's motion to have the requests deemed admitted and the court's subsequent journal entry deeming the requests admitted. At trial, the requests and the court's journal entry were offered by Ryan and received into evidence by the court. On appeal, Ryan argues that the district court did not give sufficient weight to these admissions in determining whether to grant custody of the children to Ryan.

Under Rule 36, if the request for admission seeks information that is permissible under Neb. Ct. R. Disc. § 6-326, the request can ask a party to admit facts in dispute, the ultimate facts in a case, or facts as they relate to the law applicable to the case. *Tymar v. Two Men and a Truck*, 282 Neb. 692, 805 N.W.2d 648 (2011). A party that seeks to claim another party's admission, as a result of that party's failure to respond properly to a request for admission, must prove service of the request for admission and the served party's failure to answer or object to the request and must also offer the request for admission as evidence. *Id.* If the necessary foundational requirements are met and no motion is sustained to withdraw an admission, a trial court is obligated to give effect to the provisions of Rule 36 which require that the matter be deemed admitted. *Id.*

In the present case, Ryan proved service of the requests for admissions and Amanda's failure to respond to the requests. Ryan also offered these requests for admissions as evidence. The district court then deemed these requests admitted. At no point during the pendency of the case did Amanda request to withdraw her admissions. Ryan argues that the district court is obligated to give effect to these admissions.

However, in cases involving child custody, the failure to answer requests for admissions cannot circumvent the court's duty to independently assess a child's best interests in determining the child's custodial arrangement. *Citta v. Facka*, 19 Neb. App. 736, 812 N.W.2d 917 (2012). In *Citta*, the father, prior to a trial on a paternity action, served the mother with requests for admissions asking the mother to admit that the father was a fit and proper parent to the child, and that it was in the best interests of the child for physical custody to be granted to the father. The mother failed to respond to the requests for admissions. *Id.* At trial, the district court received the requests for admissions but did not issue a ruling on the motion to deem the requests for admissions admitted. *Id.* On appeal, the father argued that the district court erred in not deeming the requests for admissions admitted. *Id.* We determined that while the district court erred in not deeming the admissions admitted based upon the mother's failure to timely answer or object to the requests for admissions, the trial court was not bound by the resulting admissions in deciding the child's custody. We first noted authority from other states which found that rules of civil procedure did not function to obviate the court's obligation to make an independent determination of the child's best interests as to custody. We then stated:

> Nebraska statutory and case law already explicitly applies the same principle to parties' agreements addressing child custody. It is well established in Nebraska that a trial court has an independent responsibility to determine questions of custody of minor children according to their best interests, which responsibility cannot be controlled by an agreement

- 10 -

or stipulation of the parties. See, e.g., *Zahl v. Zahl*, 273 Neb. 1043, 736 N.W.2d 365 (2007); *Weinand v. Weinand*, 260 Neb. 146, 616 N.W.2d 1 (2000); *Lautenschlager v. Lautenschlager*, 201 Neb. 741, 272 N.W.2d 40 (1978); *Deterding v. Deterding*, 18 Neb. App. 922, 797 N.W.2d 33 (2011); *Walters v. Walters*, 12 Neb. App. 340, 673 N.W.2d 585 (2004); *Zerr v. Zerr*, 7 Neb. App. 885, 586 N.W.2d 465 (1998). This public policy is embodied in Neb. Rev. Stat. § 42-366(2) (Reissue 2008), which specifically excepts agreements as to custody of minor children from being binding upon the court.

It would be inconsistent with this underlying policy to allow a party, by simply failing to answer discovery requests, to accomplish the very result that the party cannot obtain by express agreement. Accordingly, we agree with the courts of other states that the failure to respond to requests for admission regarding child custody does not control the issue. Just as parties in a proceeding to dissolve a marriage cannot control the disposition of matters pertaining to minor children by agreement, *Deterding v. Deterding, supra,* the operation of Rule 36 cannot take the issue of custody away from the trial court's responsibility to independently determine what is in the best interests of the children.

Accordingly, we hold that admissions made by a party's failure to answer requests for admissions, like agreements made by a party, cannot circumvent the court's duty to independently assess a child's best interests in determining the child's custodial arrangement.

*Citta v. Facka*, 19 Neb. App. at 746-47, 812 N.W.2d at 927.

In his brief, Ryan recognizes the court's independent responsibility to determine the best interests of the children, but claims that the district court gave no consideration to the admissions in its order. While we agree that the court made no mention of the admissions in its order, the admissions were one of many exhibits received at trial along with 2 full days of testimony. The court is not obligated to mention every item of evidence in the rationale for its decision. It is clear from the findings and order that the district court found that little weight should be given to the admissions.

Moreover, we note that the district court never actually reached the best interests question, finding that Ryan had failed to prove any material change of circumstance. We have found no abuse of discretion in the district court's determination. To the extent Ryan argues that the admissions made relate to material changes of circumstance, his argument fails. None of the requests for admissions ask Amanda to admit that any of the five alleged material changes of circumstances listed in the complaint to modify have occurred. Therefore, there being no admission to an alleged material change of circumstance, we find this assignment of error to be without merit.

*Child Support.*

Ryan argues that the district court erred in requiring him to pay child support to Amanda. However, Ryan's argument is contingent on the success of his previous argument that the district court erred in failing to award him sole legal and physical custody of the children. Because we have found that the district court did not abuse its discretion by denying Ryan's complaint to modify we also find no error in the district court's decision to require Ryan to pay child support.

We note that neither party assigns error to the amount of child support the court has ordered to be paid.

*Attorney Fees.*

Ryan argues that the district court erred in awarding Amanda attorney fees because she did not request attorney fees in her response to his complaint to modify. He also argues that the evidence did not support such an award.

Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014). Customarily, attorney fees are awarded only to prevailing parties or assessed against those who file frivolous suits. *Id.* A uniform course of procedure exists in Nebraska for the award of attorney fees in dissolution and modification cases. *Id.*

Ryan is correct insofar as he asserts that Amanda did not request attorney fees in her response to his complaint to modify. Amanda, acting without counsel, only requested a dismissal of the complaint to modify in her response. However, at trial, she testified that she was requesting attorney fees and presented an affidavit detailing the hours of work spent on the case by her attorney and the resulting attorney fees she had incurred. When she testified and offered the affidavit into evidence, Ryan made no objection. Therefore, Ryan's argument that Amanda is precluded from requesting attorney fees is being raised for the first time on appeal. We generally do not consider issues raised for the first time on appeal and decline to do so here. See *Weaver v. Weaver*, 28 Neb. App. 716, 948 N.W.2d 265 (2020).

We do, however, review the court's award. Upon our review of the record, we note that the case did not present unique or novel issues; however, it did include an appearance at a pretrial hearing, preparation for trial, and 2 days of trial, in addition to briefs submitted to the court. The affidavit and attached detailing of the hours of work spent substantiate the attorney fees that were awarded. We further note that the fees incurred by Amanda were twice the amount awarded by the court. Accordingly, we find this assignment of error to be without merit.

CONCLUSION

Based upon our de novo review of the record, we find that the district court did not abuse its discretion in denying Ryan's request to modify custody of his children such that he be awarded sole legal and physical custody. We also find no abuse of discretion in the district court's award of child support and attorney fees.

AFFIRMED.